**FLORIDA PUBLIC TELECOMMUNI-CATIONS ASSOCIATION, INC., a Florida corporation not-for-profit, Plaintiff–Appellee–Cross–Appellant,**

**v.**

**CITY OF MIAMI BEACH, Defendant–Appellant–Cross–Appellee.**

No. 01–15996.

United States Court of Appeals, Eleventh Circuit.

Feb. 13, 2003.

Sheri A. Sack, Miami, FL, for City of Miami Beach.

Michael J. Posner, West Palm Beach, FL, for Florida Pub. Telecommunications Ass'n, Inc.

Martha Carter Brown and David E. Smith, Tallahassee, FL, for Amicus Curiae, Florida Pub. Serv. Com'n.

Before WILSON and FAY, Circuit Judges, and MILLS*, District Judge.

FAY, Circuit Judge:

This appeal presents primarily three questions: (1) whether the Florida Public Service Commission has exclusive jurisdiction over the regulation of pay phones located on private property under section 364.01, Florida Statutes; (2) whether a municipality has jurisdiction to regulate pay phones located in the public rights-of-way under section 364.01, Florida Statutes; and (3) if a municipality can regulate pay phones located in the public rights-of-way, then what constitutes a reasonable and non-discriminatory regulation related thereto.

We agree with the district court's decision granting summary judgment in favor of the City of Miami Beach as to the city's jurisdiction to regulate pay phones located in the public rights-of-way. Specifically, we affirm the district court's decision that all of sections 1, 2, 3, 4, 6, 7, 8 (except for 8(d)), 11, 12, 13, 15, 16–20 and 9(a)-(e)(6) of Miami Beach, Fla. Ordinance 95–3005, as amended by Miami Beach, Fla. Ordinance 96–3041, are reasonable and non-discriminatory, and necessary for the management of pay phones within the public rights-of-way. We also find that all of sections 5, 10, and 14 of Miami Beach, Fla. Ordinance 95–3005 are not within the limits of the law as pertaining to the city's regulation of pay phones. However, we disagree with the district court's decision that subsection 9(e)(7) of Miami Beach, Fla. Ordinance 95–3005 concerning the regulation of advertising on pay phones in the public rights-of-way was not within the city's jurisdiction. In addition, we find that section 8(d) of Miami Beach, Fla. Ordinance 95–3005, concerning criminal activities in the areas of pay phones installations and in public rights-of-way is not proper. In sum, we conclude that the City of Miami Beach may regulate advertising on pay phones located in the public rights-of-way and

---

* Honorable Richard Mills, United States District Court Judge for the Central District of Illinois, sitting by designation.

consequently, that subsection 9(e)(7) of Miami Beach, Fla. Ordinance 95–3005 is valid and proper under the law. Lastly, we agree with the district court's decision that Florida state law preempts Miami Beach, Fla. Am. Ordinances 89–2665 §§ 6–21(B)(2)(d) and 89–2665 6–21(B)(4)(c) and consequently the Florida Public Service Commission has exclusive jurisdiction over the regulation of pay phones located on private property. Thus, we AFFIRM in part and REVERSE in part the district court's judgment.

## I. Background

Appellant and Cross–Appellee, the City of Miami Beach ("Miami Beach"), enacted zoning ordinances in an effort to restrict and to regulate pay phones located on private and public property within the city. Miami Beach enacted these zoning ordinances with the dual purpose of protecting the city's unique aesthetic qualities as well as ensuring public safety. The zoning ordinances involved in this appeal are Miami Beach, Fla. Am. Ordinances 89–2665 §§ 6–21(B)(2)(d) and 89–2665 6–21(B)(4)(c) (collectively the "Zoning Ordinance") and Miami Beach, Fla. Ordinance 95–3005, as amended by Miami Beach, Fla. Ordinance 96–3041 ("Right–of–Way Ordinance"). The Zoning Ordinance concerns the regulation of pay phones located on private property whereas the Right–of–Way Ordinance concerns the regulation of pay phones located in the public rights-of-way. In relevant sections, the Right–of–Way Ordinance sets forth a series of requirements: Section 4 requires pay phone operators to obtain a permit; Section 5 requires compensation for the issuance of the permit; Section 7 dictates the grounds for an operator's use of streets and sidewalks; Section 8 governs the location and placement of the pay phones; Section 9 covers the installation, maintenance, and technical requirements; Section 10 sub-

jects existing pay phones to a retroactive permit fee; Section 11 requires operators to take out bonds to cover potential damage; Section 12 requires indemnity insurance; Section 13 reserves Miami Beach's police power; and Section 14 limits transfers, assignments and subleases. §§ 4–13. Appellee and Cross–Appellant, Florida Public Telecommunications Association, Inc. ("FPTA"), an association of pay phone vendors in Florida, challenged Miami Beach's Zoning Ordinance and Right–of–Way Ordinance on the grounds that they were preempted by state and federal law as well as the United States and Florida Constitutions. Both parties filed motions for summary judgment. The district court granted summary judgment to Miami Beach in part and to FPTA in part. Miami Beach appeals the district court's findings of preemption and the unreasonableness of subsection 9(e)(7) of the Right–of–Way Ordinance and FPTA cross-appeals the district court's findings of non-preemption and the validity of certain sections of the Right–of–Way Ordinance.

Miami Beach also appeals the district court's decision that the Florida Public Service Commission ("FPSC") has exclusive jurisdiction over the regulation of pay phones located on private property.

FPTA appeals the district court's decision that a municipality has jurisdiction to regulate telecommunications companies' facilities, including pay phones located in the public rights-of-way. The district court concluded that municipalities and counties, retained under Florida state law, the power to manage the "placement or maintenance of facilities" in the public rights-of-way. Fla. Stat. § 337.401(3)(b). Additionally, the district court found that pay phones are telecommunications companies facilities and their location in the public rights-of-way subjected them to regulation by Miami Beach. In determining

whether the regulations in the Right-of-Way Ordinance were permissible, the district court applied a three-prong test as set forth in section 337.401(3)(b), Florida Statutes.

The district court also found that sections 5, 10, 14 and subsection 9(e)(7) of the Right-of-Way Ordinance were not permissible exercises of Miami Beach's authority to regulate the public rights-of-way under Florida state law because section 5 was discriminatory and sections 10, 14 and subsection 9(e)(7) were not related to the placement or maintenance of pay phones or necessary to the management of public rights-of-way. Consequently, those sections of the Right-of-Way Ordinance were held to be invalid. The district court concluded that the remaining sections of the Right-of-Way Ordinance were related to the placement or maintenance of pay phones, were reasonable and non-discriminatory, and were necessary to manage the public rights-of-way and thus were valid. Both parties appeal the district court's decisions regarding the validity of certain sections of the Right-of-Way Ordinance. Both parties agree, however, that the district court applied the correct three-prong test in determining whether sections of the Right-of-Way Ordinance were permissible.

FPTA challenges the district court's findings that certain sections of 2(1) and 6(c) and all of sections 3(a), 7(a), 8(d)-(g), 9(b), 9(d) and 9(e) of the Right-of-Way Ordinance are related to the placement or maintenance of pay phones and within the city's authority to regulate.

The FPSC also filed an *amicus* brief arguing that the district court erred in finding that certain sections of the Right-of-Way Ordinance were not preempted by state law. FPSC contends that sections 8(d)-(g), 9(b), 9(d) and 9(e) of the Right-of-Way Ordinance exceed the scope of the

city's authority to regulate public rights-of-way under its policing power and conflict with the FPSC's exclusive jurisdiction to regulate telecommunications companies. Miami Beach also appeals the district court's decision that subsection 9(e)(7) of the Rights-of-Way Ordinance was void because it was not related to the maintenance of pay phones and that the regulation of advertising on pay phones in the public *rights-of-way was not within the* city's jurisdiction under state law.

## II. Standard of Review

We review *de novo* the district court's grant of a motion for summary judgment. *Lewis v. Brunswick Corp.*, 107 F.3d 1494, 1498 (11th Cir.1997), *cert. granted*, 522 U.S. 978, 118 S.Ct. 439, 139 L.Ed.2d 337 (1997), *cert. dismissed*, 523 U.S. 1113, 118 S.Ct. 1793, 140 L.Ed.2d 933 (1998).

## III. Discussion

A. *Preemption of Miami Beach's Zoning Ordinance*

■ Miami Beach argues that a state agency's authority to regulate the location of pay phones on private property must be based upon a specific grant of authority by the legislature in the enabling statute which created the agency's power. The city contends that the Florida Legislature failed to grant the FPSC this explicit power. Miami Beach relies primarily on *Southwest Florida Water Management District v. Save the Manatee Club, Inc.*, 773 So.2d 594 (Fla. 1st DCA 2000) to support this proposition that the Florida Legislature must specifically grant to the FPSC the authority to regulate the location of pay phones located on private property in the enabling statute. A reading of the enabling statute shows that the Florida Legislature granted to the FPSC broad and exclusive powers to regulate telecommunications companies. Specifically, sec-

tion 364.01, Florida Statutes grants to FPSC the exclusive jurisdiction over the regulation of telecommunications companies within Florida. *BellSouth Telecommunications, Inc. v. Town of Palm Beach,* 252 F.3d 1169, 1177 (11th Cir.2001). The language of the statute leaves no doubt about the broad and exclusive powers granted to the FPSC to regulate telecommunications companies including their services and facilities. In contrast, in *Southwest Florida Water Management District,* the court concluded that the Florida Legislature did not grant to the Southwest Florida Water Management District (the "District") such broad powers but only very specific and limited powers. We find no merit in this argument about the extent of the enabling statute in this case.

It is also clear that the limitations to this broad authority are very specific. In relevant part, section 364.01(2), Florida Statutes provides that:

> It is the legislative intent to give exclusive jurisdiction in all matters set forth in this chapter to the Florida Public Service Commission in regulating telecommunications companies, and such preemption shall supersede any local or special act or municipal charter where any conflict of authority may exist. However, the provisions of this chapter shall not affect the authority and powers granted in s. 166.231(9) or s. 337.401.

Since the Florida Legislature granted the FPSC exclusive jurisdiction to regulate telecommunication companies, it clearly has the power to regulate pay phones and their locations on private property within Florida. *See Teleco Communications Co. v. Clark,* 695 So.2d 304 (Fla.1997). We find it unpersuasive to argue that the Florida Legislature should have itemized the powers of the FPSC when it gave it such broad and exclusive authority over telecommunications companies.

The only limitation on this exclusive jurisdiction to regulate telecommunications companies relevant to this case is that municipalities and counties retain the right to manage their roads and public rights-of-way pursuant to their police power. Section 337.401(3)(b), Florida Statutes, states that "[e]ach municipality and county retains the authority to regulate and manage municipal and county roads or rights-of-way in exercising its police power." Thus, municipalities' and counties' right to regulate their roads and the public rights-of-way allow them to regulate telecommunications companies' facilities including pay phones located in those spaces. It is undisputed that pay phones are facilities of telecommunications companies as those words are used in the statute. Thus, as the district court correctly found, the enabling statute broadly granted the FPSC exclusive jurisdiction over all matters except for those involving the management of municipal or county roads and the public rights-of-way. Consequently, the Miami Beach Zoning Ordinance which regulates pay phones located on private property is preempted in its entirety under Florida state law.

## B. *Miami Beach's Right–of–Way Ordinance*

■ FPTA argues that Miami Beach does not have the authority to manage telecommunications companies' facilities in its roads and the public rights-of-way. It claims that the FPSC has exclusive jurisdiction over telecommunications companies which includes the regulation of telecommunications companies' facilities located on either private or public property. The district court ruled that the Right–of–Way Ordinance was not preempted by section 364.01(4), Florida Statutes, because Miami Beach as a municipality, was expressly granted the right to regulate facilities lo-

cated in its roads and the public rights-of-way including telecommunications companies' facilities. We agree. As discussed above, under section 364.01(2), Florida Statutes, local governments retain jurisdiction to manage their roads and the public rights-of-way. This jurisdiction includes the right to manage the "placement or maintenance of facilities." Fla. Stat. § 337.401(3)(b).

In this case, Miami Beach's Right-of-Way Ordinance only concerns the regulation of pay phones located within the city's public rights-of-way. Pay phones are clearly facilities, therefore, pay phones located in Miami Beach's public rights-of-ways are subject to the city's regulation under section 337.401(b), Florida Statutes. There is no preemption by state law.

Although the scope of a municipality's and county's jurisdiction to manage its roads and the public rights-of-ways is extremely broad under its policing power, section 337.401, Florida Statutes limits somewhat the authority to regulate telecommunications companies' facilities. The Florida Legislature set forth three requirements that must be satisfied for a municipality or county to regulate a telecommunications company's facilities in its roads or the public rights-of-way. In relevant part, section 337.401(3)(b), Florida Statutes, states that:

> Each municipality and county retains the authority to regulate and manage municipal and county roads or rights-of-way in exercising its police power. Any rules or regulations adopted by a municipality or county which govern the occupation of its roads or rights-of-way by providers of communications services must be related to the placement or maintenance of facilities in such roads or rights-of-way, must be reasonable and nondiscriminatory, and may include only those matters necessary to manage the roads or rights-of-way of the municipality or county.

Therefore, for a regulation over a telecommunications company's facilities in a municipal and county road or the public rights-of-way to be valid, the regulation must be (1) related to the placement or maintenance of facilities in municipal and county roads or the public rights-of-way; (2) reasonable and non-discriminatory; and (3) necessary to the management of such roads and public rights-of-way. Fla. Stat. § 337.401(b).

Since we have already determined that Miami Beach has jurisdiction to regulate pay phones in its roads and the public rights-of-way, the next task for this court is to determine whether the regulations in question meet the requirements of the statute. We address each relevant section of the Right-of-Way Ordinance in turn.

*1. Section 2(1)—Statement of Purpose*

■ FPTA argues that parts of section 2(1) of the Right-of-Way Ordinance are not related to the placement or maintenance of facilities in the public rights-of-way because the regulation of pay phones' operation, testing and use do not fall within the scope of Miami Beach's jurisdiction. The district court concluded that section 2 was not preempted by Florida state law because it provides the foundation for the Right-of-Way Ordinance. FPTA contends the district court erred in concluding that those portions of section 2(1) were not implicated by Florida law because they were beyond Miami Beach's jurisdiction to regulate. However, we find no merit in FPTA's arguments and agree with the district court's conclusion that section 2 is foundational, states a purpose consistent with the Florida Statutes and, therefore, does not involve any preemption concerns.

### 2. Section 3(a)—Definitions

Section 3(a) of the Right–of–Way Ordinance states: "(a) 'Architectural Feature' shall mean any ornamentation, decorative column, or other significant building detail which represents an important part of the building's design." FPTA argues that section 3(a) is not related to the placement or maintenance of pay phones or necessary to manage the public rights-of-way because this section seeks to regulate the design of pay phones. According to FPTA, the design of pay phones does not have any relationship to their placement or maintenance. It claims that the Florida Legislature reserved to FPSC the exclusive jurisdiction to regulate design criteria for pay phones. In response, Miami Beach contends that its definition of architectural features in section 3(a) provides meaning to the Right–of–Way Ordinance and does not itself regulate pay phones. The district court found that section 3(a) was not preempted by Florida state law. We agree. Reasonable limitations on the design of pay phones deals directly with a concern for aesthetics. We agree with the district court's conclusion that section 3(a) is within the authority of the city and does not raise any preemption concerns.

### 3. Section 6(c)—Powers and Duties of City Public Works Director

Section 6 of the Right–of–Way Ordinance grants Miami Beach's Public Works Director the power to either grant or deny an application for a pay phone permit; to make regulations pertaining to applications for pay phone permits; and to make regulations regarding the construction, reconstruction, installation, operation, maintenance, dismantling, testing, repair and use of any pay phones. FPTA argues that the terms in section 6(c) are too broad and ambiguous. FPTA contends that this makes the section beyond the scope of

Miami Beach's limited authority to promulgate reasonable regulations related to the placement or maintenance of facilities in the public rights-of-way. To the contrary, however, we agree with the district court's findings that all of section 6 is related to the placement or maintenance of facilities in the public rights-of-way, is reasonable and non-discriminatory, and is necessary to manage the public rights-of-way. Certainly, there must be some order in the regulations and some official must be designated to oversee compliance with those regulations.

### 4. Section 7(a)—Use of Streets and Sidewalks

Section 7(a) of the Right–of–Way Ordinance set forth requirements that pay phone providers must satisfy prior to installing pay phones and their duties after installation of pay phones with regards to streets and sidewalks as well as other municipal construction projects such as public excavations including installation of sewer lines. FPTA contends that the last sentence of this section grants Miami Beach the authority to deny a pay phone permit even though an applicant has complied with all of the city's requirements for the issuance of such permit. The last sentence of 7(a) states that "[a]pproval or denial of Pay Telephone permits shall be issued by the Director within sixty (60) working days of Application for said permits." FPTA claims that section 7(a) grants Miami Beach's Public Works Director impermissible powers to adopt any format for approval and for denial of any pay phone permit application. In response, Miami Beach contends that the last sentence deals only with an affirmative duty by the Public Works Director to act within a certain time frame in approving or denying a pay phone permit. We agree. It is patently clear to us that all of section 7 is a reasonable regulation related to the placement or

maintenance of facilities located in the public rights-of-ways and necessary for the management of the public rights-of-way.

### 5. Sections 8(d)—Placement of Pay Telephones Near Substantial Criminal Activity

■ The district court found that section 8(d) of the Right-of-Way Ordinance is reasonably related to the placement or maintenance of facilities in the public rights-of-way, is reasonable and non-discriminatory, and is necessary to mange public rights-of-way under the city's policing power. This includes the city's authority to protect its citizens health, safety and general welfare. Section 8(d) states that:

Pay telephones shall not be placed in Streets or Sidewalks within one hundred (100) feet of street addresses where there is substantial criminal activity. Substantial criminal activity shall mean reports to the police of four (4) or more criminal incidents at an address during any three (3) consecutive months period, both prior and subsequent to the date of the application and/or the installation.

FPTA argues that section 8(d) is defective because there is no connection between the installation of pay phones and criminal activities. FPTA claims that the regulation does not identify or require any connection between a pay phone's installation or operation and the substantial criminal activities as defined in the ordinance. In response, Miami Beach contends that it has always interpreted section 8(d) to require that the substantial criminal activity be directly related to the pay phone at issue. The problem with that argument is that the language of the ordinance does not say that. As written, section 8(d) does not require that there be any connection between the criminal activities and the pay phone at issue. Section 8(d) only requires that there be four or more criminal inci-

dents within any three consecutive months period within one hundred feet of a pay phone. This court can conceive of many circumstances where there might be substantial criminal activities within a hundred feet of a pay phone and there be no connection whatsoever between the crimes and the particular pay phone. For a municipality's regulation over pay phones and criminal activities to be reasonably related, there must be some connection between the particular pay phone and the criminal activities. Therefore, we find that section 8(d) does not meet the requirements of the law and, therefore, is void.

### 6. Sections 8(f)—No Pay Telephones in Residential Districts

Section 8(f) of the Right-of-Way Ordinance states that: "Pay Telephones shall not be installed in Single or Multi-Family Residential Districts, as described in the City's Zoning Ordinance No. 89-2665." FPTA argues that section 8(f) is unreasonable because it is an outright ban on pay phones located within the roads or public rights-of-way in single or multi-family residential neighborhoods. Although FPTA challenges the district court's findings, it fails to explain how section 8(f) is unreasonable and fails to provide any support for its contention that an outright ban on pay phones in such areas is prohibited. We find no merit in the challenge. Municipalities have the power to regulate and restrict activities under their policing power for the general welfare of their citizens. See Lamar-Orlando Outdoor Advertising v. City of Ormond Beach, 415 So.2d 1312, 1315 (Fla. 5th DCA 1982). Indeed, as the district court correctly concluded, Miami Beach, pursuant to its police power, has the authority to regulate the placement of pay phones in the public rights-of-ways located in residential neighborhoods. We conclude that this limited ban in residen-

tial neighborhoods is consistent with the authority given municipalities.

### 7. Section 8(g)—Removal of Pay Telephones Found To Be a Public Threat

Section 8(g) of the Right–of–Way Ordinance permits Miami Beach to investigate and to potentially revoke a pay phone provider's permit for any pay phone located in the public rights-of-way that is found to "constitute a threat to the health and welfare of the community." FPTA contends that there is no connection between the location and use of pay phones and Miami Beach's definition of "threat to the health and welfare of the community." Although we found that section 8(d) was invalid because there was no relationship between the substantial criminal activity and pay phones, such is not the case here. Section 8(g) requires that there be a connection between the location and use of the pay phone at issue and a threat to the health and welfare of the community. Therefore, as the district court correctly found, section 8(g) meets the requirements of the law and is within the authority of the city.

### 8. Sections 9(b), 9(d) and 9(e)—Installation, Maintenance, and Technical Standards

FPSC argues that sections 9(b), 9(d) and 9(e) of the Right–of–Way Ordinance are not reasonably related to the maintenance of pay phones and to the management of the public rights-of-way because these sections regulate telecommunications companies' services and not telecommunications companies' facilities. Section 9(b) requires that certain types of enclosures be used for pay phones. Section 9(d) requires that pay phone providers seek and obtain waivers from the FPSC to restrict phone calls to only incoming calls. Section 9(e) regulates how paint, metal, plastic, glass, and cardboard inserts on pay phones must be maintained. FPSC fails to offer any explanation as to why these regulations do not meet the three-prongs outlined above and are not permissible regulations by Miami Beach. The district court found that section 9(b) which covers the configuration of pay phones' enclosures affect both the maintenance of pay phones and the maintenance of surrounding roads or public rights-of-way. The district court also found that section 9(d) was proper because it relates to the city's police power and does not interfere with the incoming call block procedures under Florida state law. Lastly, the district court found that section 9(e) except for 9(e)(7) was proper since this section concerns the general upkeep of payphones. We agree with the district court that sections 9(b), 9(d) and 9(e) are related to the placement or maintenance of facilities in the public rights-of-way, are reasonable and non-discriminatory, and are necessary for the management of the public rights-of-way.

### 9. Section 9(e)(7)—No Advertising on Pay Telephones

██ Section 9(e)(7) of the Right–of–Way Ordinance provides that "[n]o pay phone(s) shall contain any advertising." The city claims that the total ban on advertising on pay phones in the public rights-of-way is necessary to preserve the city's aesthetics and for public safety. Miami Beach argues that under its police power it can regulate advertising, including advertising signs, in protecting the city's aesthetics and for the general welfare of its citizens. The district court concluded that section 9(e)(7) is not related to the maintenance of pay phones because the regulation is overly broad. The district court reasoned that since advertising on pay phones in the public rights-of-way can be maintained in a neat manner, Miami Beach's total ban on advertising on pay

phones was unreasonable. The district court further concluded that a total ban of advertising on pay phones was only within the exclusive jurisdiction of the FPSC. We disagree.

Again, the issue is whether Miami Beach's regulation of advertising on pay phone relates to the maintenance of pay phones and is necessary to mange the public rights-of-way. Indeed, in this circuit, we have recognized a government's substantial interest in aesthetics and the right to maintain its aesthetics through zoning regulations. *One World One Family Now v. City of Miami Beach,* 175 F.3d 1282, 1287 (11th Cir.1999); *Messer v. City of Douglasville, Ga.,* 975 F.2d 1505, 1510 (11th Cir.1992). Clearly, Miami Beach has a substantial governmental interest in protecting and maintaining the city's aesthetics and this includes control over advertising through valid ordinances.

We conclude that a total ban on advertising on pay phones in the public rights-of-way is a permissible regulation. *See e.g., Members of City Council for the City of Los Angeles v. Taxpapers for Vincent,* 466 U.S. 789, 805–807, 104 S.Ct. 2118, 2128–2130, 80 L.Ed.2d 772 (1984); *Supersign of Boca Raton, Inc. v. City of Fort Lauderdale,* 766 F.2d 1528, 1531–32 (11th Cir.1985) (holding that a city may prohibit advertising vehicles on public streets or waterways to preserve aesthetics and safety). It is perfectly consistent with the city's interest in preserving aesthetics and ensuring public safety. *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (upholding the city's content-neutral prohibition use of billboards as sufficiently substantial to the city's interest in aesthetics). Advertising of any sort can damage the aesthetics of a neighborhood and can be a distraction to motorists operating vehicles on a city's roads. We uphold this section of the city's ordinance.

## IV. Conclusion

In sum, we hold that Miami Beach's Zoning Ordinance is preempted by Florida state law but that its Right-of-Way Ordinance is not. The Right-of-Way Ordinance is a reasonable and proper exercise of its authority to regulate pay phones in the public rights-of-way except for sections 5, 8(d), 10 and 14. Thus, we REVERSE the district court's upholding of section 8(d); we REVERSE the district court's decision striking down subsection 9(e)(7); and we AFFIRM the district court's judgment in all other respects.

AFFIRMED in part; REVERSED in part.