2008 ND 7

**CITY OF MINOT, Plaintiff and Appellee**

v.

**Tim BOGER, Joni Boger, Timothy John Boger, Jr., and Marissa Boger, Defendants and Appellants.**

**No. 20070158.**

Supreme Court of North Dakota.

Jan. 17, 2008.

Rehearing Denied Feb. 21, 2008.

Nevin Van de Streek, City Attorney, Eaton, Van de Streek & Ward, Minot, N.D., for plaintiff and appellee.

Robert S. Rau, Bosard, McCutcheon & Rau, Ltd., Minot, N.D., for defendants and appellants.

VANDE WALLE, Chief Justice.

[¶ 1] Tim Boger, Joni Boger, Timothy John Boger, Jr., and Marissa Boger appealed from a judgment enjoining them from storing or parking heavy construction equipment and allowing their employees to mobilize for work on their property, and dismissing their counterclaim for damages against the city of Minot for inverse condemnation. We conclude the district court did not err in issuing the injunction as we have modified it or in dismissing the Bogers' claim for damages. We affirm the judgment as modified.

I

[¶ 2] The Bogers own three city lots in Minot which are zoned single family residential. The first two lots were purchased by a contract for deed in April 1981, and the Bogers obtained a warranty deed for the lots in July 1985. They obtained the third lot in February 1997. The Bogers built a home and later built a commercial building on the lots. For the past 25 years the Bogers have operated a street-sweeping business, Boger and Sons Super Vac, on their property. According to the Bo-

gers, no one is employed in this business other than family members. Recently the Bogers began operating a lawn care business, B & B Ground Service, out of their home. Non-family members are employed in this business. As a result of their business activities, the Bogers have used their property to store business equipment when it is not in use. The equipment includes street sweepers, front-end loaders, dump trucks, and other machinery. Employees of the businesses reported to work at the Boger residence, picked up the equipment they needed, and left their personal vehicles at the residence until their work days were completed.

[¶ 3] In October 2002, the city of Minot brought this action against the Bogers to enjoin them from conducting the businesses out of their home property, alleging those businesses did not qualify as permissible "home occupations" under the applicable city zoning ordinance. The Bogers counterclaimed, alleging Minot's attempt to enforce the zoning ordinance constituted an unconstitutional taking of their property through inverse condemnation. Following an evidentiary hearing and other proceedings, the district court granted an injunction:

1. The defendants (or of any one or combination of the defendants), and those in privity with them (or any one or combination of them) are enjoined from storing or parking heavy construction equipment or similar equipment including but not limited to street sweepers, front-end loaders, back-hoes, skid-loaders, fork-lifts, belly-loaders, motor-graders, dump trucks, Bob Cats, paint trucks, and snow-plows on the following described premises (hereafter "the premises"), to wit: Lots 3, 4, and 6, Block 6, Radio City Subdivision of Blocks 5, 6, 7, and 8, Ward County, North Dakota.

2. The defendants (or of any one or combination of the defendants), and those in privity with them (or any one or combination of them) are enjoined from using the premises as a place for the employees of the defendants (or of any one or combination of them), as a site for mobilizing for working for the defendants (or of any one or combination of them). As used herein "mobilizing for work" means reporting to work at a place and leaving at or near that place the vehicle, if any, which one used in order to arrive at such place.

The court also dismissed the Bogers' counterclaim, concluding there had been no taking of their property through enforcement of the zoning ordinance.

## II

[¶ 4] The Bogers contend the district court erred in construing the applicable Minot zoning ordinance and in determining they were violating the ordinance.

[¶ 5] In *Hentz v. Elma Twp. Bd. of Supervisors,* 2007 ND 19, ¶ 9, 727 N.W.2d 276, we said:

We interpret ordinances as we would any statute. *GO Committee v. City of Minot,* 2005 ND 136, ¶ 9, 701 N.W.2d 865 (citations omitted). Ordinance interpretation, like statutory interpretation, is a question of law subject to full review upon appeal. *Id.* (citation omitted). "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained." N.D.C.C. § 1–02–02. "When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05. In construing a statute, we ascertain the enacting body's intent by giving the statutory language its plain, ordinary, and commonly understood meaning. *GO Committee,* at ¶ 9. " 'We construe statutes as a whole and harmonize them to give meaning to related provisions.' " *Id.* (quoting *Larson v. Larson,* 2005 ND 67, ¶ 8, 694 N.W.2d 13).

[¶ 6] A "home occupation" is permitted on property zoned single family residential under Minot's zoning ordinances if it meets the definitional criteria. In the district court, the parties agreed that the 1978 version, rather than the amended 1985 version, of Minot Zoning Ordinance No. 2223, applied:

*Home Occupation:* Any occupation or activity which meets *all* of the following tests:

(a) The occupation is managed and owned by a person residing on the premises and not more than one other person is employed by the owner/manager on the premises except members of the immediate family of the owner/manager who also live on the premises.

(b) The exterior of the premises used for the home occupation is indistinguishable from any other residential dwelling of like design and character, in that no commercial displays, show windows, exterior storage areas, parking areas, are evident except that a name plate or business sign not more than 2 feet square may be exhibited, which is attached flush to the side of the building.

(c) The home occupation does not generate pedestrian traffic substantially greater, or vehicular traffic or vehicular parking substantially greater or substantially different in kind or character, than that ordinarily associated with a similar dwelling which is used solely for residential purposes.

(d) The home occupation is no more dangerous to life, personal safety, or property than any other activity ordinarily carried on with respect to premises used solely for residential purposes.

(e) No loud or unpleasant noises, bright, or glaring lights, offensive or noxious fumes, or odors, or perceptible vibrations attributable to the home occupation are emitted from the premises.

[¶ 7] The Bogers argue the court erred in imposing the restriction on parking heavy construction equipment on the premises because the ordinance "is silent as to the *number or quality of vehicles* that may be sited at a residence." The Bogers' argument ignores that subdivision (b) of Ordinance No. 2223 provides "no commercial ... exterior storage areas, [and] parking areas, are evident" on the exterior of the premises. Further, subdivision (c) of Ordinance No. 2223 requires that the home occupation "not generate ... vehicular traffic or vehicular parking substantially greater or substantially different in kind or character, than that ordinarily associated with a similar dwelling which is used solely for residential purposes." If the Bogers are claiming a due process violation, the due process clauses of the federal and state constitutions are not violated under the void-for-vagueness doctrine if the challenged language, when measured by common understanding and practice, gives adequate warning of the conduct proscribed and marks boundaries sufficiently distinct for fair administration of the law. *In re McGuire*, 2004 ND 171, ¶ 19, 685 N.W.2d 748. We believe the ordinance gives adequate warning of the proscribed conduct.

[¶ 8] The district court found the Bogers were in violation of Ordinance No. 2223. The court found the Bogers used their property as a marshaling point for B & B Ground Service employees and those employees parked their vehicles on or near the premises and used the Bogers' work vehicles and equipment at various job sites. The court further found the Bogers used their "premises for external storage and parking of equipment, machinery, and commercial vehicles." The equipment included a grader, two or three street sweepers, a pay loader or front-end loader, Bobcats, dump trucks, vacuum trucks, and vats for melting tar. The court found these vehicles and machinery were "substantially greater or substantially different in kind or character, than that ordinarily associated with a similar dwelling which is used solely for residential purposes."

[¶ 9] A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if it is not supported by any evidence, if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made, or if the finding is induced by an erroneous view of the law. *WFND, LLC v. Fargo Marc, LLC*, 2007 ND 67, ¶ 13, 730 N.W.2d 841. We conclude the district court's finding that the Bogers did not have a permissible "home occupation" under the Minot zoning ordinance is not clearly erroneous.

III

[¶ 10] The Bogers argue that 1985 amendments to the Minot zoning ordinance were improperly promulgated and are invalid. The Bogers also contend their use of the land had vested because it predated the "purported amendments" to the ordinance and, therefore, they should be grandfathered into the ordinance. However, based on a stipulation of the parties, the district court applied the 1978 version of the ordinance, not the 1985 version. The Bogers did not purchase the first of

their lots until 1981. The Bogers' arguments about improper promulgation of the 1985 amendments to the ordinance and about being grandfathered into the ordinance are irrelevant under the circumstances.

## IV

[¶ 11] The Bogers contend that the City improperly considered aesthetics in implementing the zoning ordinance.

[¶ 12] In *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 110, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), the Supreme Court held that application of New York City's Landmarks Preservation Law to private property did not constitute a taking of property under the Fifth Amendment where the city's zoning laws prevented use of the air space above Grand Central Terminal after the Landmarks Preservation Commission designated it as a " 'landmark' " having " 'a special character or special historical or aesthetic interest or value as part of the development, heritage or cultural characteristics of the city, state or nation.' " The Court noted "[o]ver the past 50 years, all 50 States and over 500 municipalities have enacted laws to encourage or require the preservation of buildings and areas with historic or aesthetic importance." *Id.* at 107, 98 S.Ct. 2646 (footnote omitted). "It is well settled that the state may legitimately exercise its police powers to advance esthetic values." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 805, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). Courts have recognized a government's substantial interest in aesthetics and the right to maintain its aesthetics through zoning regulations. *See, e.g., Florida Pub. Telecomm. Ass'n, Inc. v. City of Miami Beach*, 321 F.3d 1046, 1055 (11th Cir.2003). Minot could validly consider aesthetics under its authority to zone

for the purpose of promoting "the general welfare of the community." N.D.C.C. § 40–47–01.

## V

[¶ 13] The Bogers appear to argue the injunction is overbroad because it denies them rights which other owners of residential property within Minot may enjoy. They contend the injunction improperly prohibits "all categories of equipment" on their property and the employment of any non-family members.

[¶ 14] The injunction does not prohibit "all categories of equipment," but merely prohibits "storing or parking heavy construction equipment or similar equipment." The prohibited equipment is specified in a nonexclusive list of what can only be considered "heavy construction equipment." The injunction does not prohibit commonly used commercial vehicles. The injunction does prohibit the Bogers "from using the premises as a place for the employees of the defendants ... for mobilizing for working for the defendants." Under subdivision (a) of Minot Zoning Ordinance No. 2223, one non-family member may be employed on the premises in a valid "home occupation." To the extent the district court's injunction can be interpreted to prohibit one non-family member employee from "mobilizing" for work on the Bogers' premises, it is overbroad. We modify the injunction to permit one non-family member employee to mobilize for work on the Bogers' premises. *See Federal Land Bank of St. Paul v. Ziebarth*, 520 N.W.2d 51, 59 (N.D.1994) (modifying injunction to conform to district court's intention).

## VI

[¶ 15] The Bogers argue a regulatory taking of their property has occurred through inverse condemnation.

[¶ 16] Whether there has been a taking of private property for public use is

a question of law which is fully reviewable on appeal. *McCrothers Corp. v. City of Mandan*, 2007 ND 28, ¶ 34, 728 N.W.2d 124. In *Wild Rice River Estates, Inc. v. City of Fargo*, 2005 ND 193, ¶ 13, 705 N.W.2d 850 (internal citations omitted), this Court set forth the standards governing a takings claim when there has not been a physical taking of property or a deprivation of all economically beneficial use of the property:

These standards are "designed to allow 'careful examination and weighing of all the relevant circumstances.' The primary *Penn Central* factors are '[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations,' and the 'character of the governmental action'—for instance whether it amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good.' The *Penn Central* inquiry turns in large part, albeit not exclusively, upon the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests."

[¶ 17] The Minot zoning ordinance advances a legitimate and substantial government interest. The Bogers had no legitimate or reasonable investment-backed expectations in essentially using their premises in a commercial rather than a residential manner, because Minot Zoning Ordinance No. 2223 was in effect several years before they purchased their residential lots. *See McCrothers Corp.*, 2007 ND 28, ¶ 35, 728 N.W.2d 124. The ordinance has not deprived the Bogers of economically beneficial use of the property. As the district court noted, "[t]he injunction does not affect the use of their residential property as a residence in any manner, and the evidence presented [established]

that the Bogers' property would not have any substantial increased marketability or market value if the property was allowed to be used for commercial or industrial use and that the highest and best use of the Bogers' property was that of a residential home and garage." We conclude there has not been an unconstitutional taking of the Bogers' property without just compensation. *See Eck v. City of Bismarck*, 302 N.W.2d 739, 745 (N.D.1981) ("a zoning ordinance is not invalid merely because it prohibits the highest or best use of the property"); *Eck v. City of Bismarck*, 283 N.W.2d 193, 198–99 (N.D.1979) (city's enactment of ordinance limiting use of property to agricultural purposes and failure to amend ordinance to allow single-family residential use did not support action for inverse condemnation); *Dorman v. Township of Clinton*, 269 Mich.App. 638, 714 N.W.2d 350, 352–58 (2006) (plaintiff who asserts denial of economically viable use of land must show that property was either unsuitable for use as zoned or unmarketable as zoned); *MC Props., Inc. v. City of Chattanooga*, 994 S.W.2d 132, 136 (Tenn. Ct.App.1999) (refusal to rezone property from residential to commercial was not unconstitutional taking by inverse condemnation where existing zoning allowed beneficial use even if it deprived owners of best use of property).

## VII

[¶ 18] We have considered the other arguments raised by the Bogers and conclude they are without merit. The judgment, as modified, is affirmed.

[¶ 19] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.