2008 ND 60

**Stephanie SAUBY, individually and on behalf of those similarly situated, Plaintiff**

v.

**CITY OF FARGO, Defendant.**

No. 20070202.

Supreme Court of North Dakota.

March 25, 2008.

Monte L. Rogneby (argued), Timothy Q. Purdon (appeared), Mark A. Friese (appeared) and Robert B. Stock (appeared), Vogel Law Firm, Bismarck, N.D., for plaintiff.

Mike Miller (argued), City Attorney, and Stacey E. Tjon (appeared), Assistant City Attorney, Fargo, N.D., for defendant.

Jerald A. Hjelmstad (on brief), Bismarck, N.D., for amicus curiae North Dakota League of Cities.

Aaron Grayson Birst (on brief), Bismarck, N.D., for amicus curiae North Dakota Association of Counties.

SANDSTROM, Justice.

[¶ 1] Under N.D.R.App.P. 47, the United States District Court, Southeastern Division for the District of North Dakota, certified the following question of law to this Court:

May the City of Fargo, pursuant to its home rule charter, lawfully impose a fee for a violation, in the City of Fargo, of a Fargo ordinance regulating the operation or equipment of motor vehicles or regulating traffic that exceeds the limits for equivalent categories of violations set forth in N.D.C.C. § 39–06.1–06?

[¶ 2] Because we conclude N.D.C.C. § 12.1–01–05 clearly and unambiguously precludes a home rule city from superseding criminal or noncriminal offenses defined by state law, we answer the certified question "no."

I

[¶ 3] The District Court's order for certification recites the following facts relevant to the question certified:

Plaintiff Stephanie Sauby is a resident of the City of West Fargo, Cass County,

North Dakota. Defendant City of Fargo is a political subdivision and a municipal corporation organized under the laws of the state of North Dakota. The city of Fargo is a home rule city under the laws of the state of North Dakota.

At all relevant times herein, the City of Fargo has established fees for non-criminal traffic violations pursuant to city ordinance. At all relevant times herein, the City of Fargo has established and collected fees for non-criminal traffic violations, pursuant to its home rule charter, in excess of the fees allowed under N.D.C.C. § 39–06.1–06.

On February 21, 2003, Plaintiff Stephanie Sauby was cited by a City of Fargo Police Officer for Failure to Have Vehicle Under Control, and thereafter forfeited bond, pursuant to the City of Fargo's fee schedule, in the amount of $60. Under N.D.C.C. § 39–06.1–06, the maximum fee that could be imposed for the violation of Failure to Have Vehicle Under Control is $30.

On August 17, 2003, Plaintiff Stephanie Sauby was cited by a City of Fargo Police Officer for Driving a Motor Vehicle without Required Safety Belt, and thereafter forfeited bond, pursuant to the City of Fargo's fee schedule, in the amount of $40. Under N.D.C.C. § 39–06.1–06, the maximum fee that could be imposed for the violation of Driving a Motor Vehicle without Required Safety Belt is $20.

On September 27, 2003, Plaintiff Stephanie Sauby was cited by a City of Fargo Police Officer for Speeding nine miles per hour over limit, and thereafter forfeited bond, pursuant to the City of Fargo's fee schedule, in the amount of $40. Under N.D.C.C. § 39–06.1–06, the maximum fee that could be imposed [for] violation of Speeding nine miles per hour over limit is $9.

On June 4, 2004, Plaintiff Stephanie Sauby was cited by a City of Fargo Police Officer for Driving a Motor Vehicle without Required Safety Belt, and thereafter forfeited bond, pursuant to the City of Fargo's fee schedule, in the amount of $40. Under N.D.C.C. § 39–06.1–06, the maximum fee that could be imposed for the violation of Driving a Motor Vehicle without Required Safety Belt is $20.

On January 24, 2006, Plaintiff Stephanie Sauby was cited by a City of Fargo Police Officer for Speeding thirteen miles per hour over limit, and thereafter forfeited bond, pursuant to the City of Fargo's fee schedule, in the amount of $62. Under N.D.C.C. § 39–06.1–06, the maximum fee that could be imposed for the violation of Speeding thirteen miles per hour over limit is $13.

The City of Fargo continues to establish and collect fees for non-criminal traffic offenses, pursuant to the City of Fargo's fee schedule established by ordinance in excess of the fees allowed under N.D.C.C. § 39–06.1–06.

[¶ 4] This Court has jurisdiction under N.D.R.App.P. 47.

II

[¶ 5] The North Dakota Constitution directs that the Legislature "shall provide by law for the establishment and exercise of home rule in counties and cities." N.D. Const. art. VII, § 6. The Legislature has provided for home rule cities through the enactment of N.D.C.C. ch. 40–05.1. A validly enacted home rule "charter and the ordinances made pursuant to the charter in such matters supersede within the territorial limits and other jurisdiction of the city any law of the state in conflict with the charter and ordinances and must be liberally construed for such purposes." N.D.C.C. § 40–05.1–05.

[¶ 6] Nevertheless, a home rule city's power to enact ordinances that supersede state law is not without limitation, because a home rule city's powers must be based upon statutory provisions. *City of Fargo v. Malme*, 2007 ND 137, ¶ 10, 737 N.W.2d 390. It is axiomatic that "[c]ities are creatures of statute and possess only those powers and authorities granted by statute or necessarily implied from an express statutory grant." *City of Bismarck v. Fettig*, 1999 ND 193, ¶ 4, 601 N.W.2d 247. This Court has held the supersession provision in N.D.C.C. § 40–05.1–05 applies only to those powers enumerated in N.D.C.C. § 40–05.1–06, and those powers must also be included in the charter and be implemented by ordinance. *Malme*, at ¶ 11; *Litten v. City of Fargo*, 294 N.W.2d 628, 632 (N.D.1980). Article 3, §§ G and I of Fargo's home rule charter, and N.D.C.C. § 40–05.1–06(7) and (9) grant power:

> To provide for the adoption, amendment, and repeal of ordinances, resolutions, and regulations to carry out its governmental and proprietary powers and to provide for public health, safety, morals, and welfare, and penalties for a violation thereof.
>
> . . . .
>
> To define offenses against private persons and property and the public health, safety, morals, and welfare, and provide penalties for violations thereof.

We agree with the parties that these provisions authorize Fargo to enact traffic ordinances and prescribe penalties for violations of those ordinances.

[¶ 7] Sauby contends, however, that Fargo has no authority to assess penalties in excess of those provided in N.D.C.C. § 39–06.1–06 because N.D.C.C. § 12.1–01–05 provides:

> *Crimes defined by state law shall not be superseded by city or county ordinance or by home rule city's or county's charter or ordinance.* No offense defined in this title or elsewhere by law shall be superseded by any city or county ordinance, or city or county home rule charter, or by an ordinance adopted pursuant to such a charter, and all such offense definitions shall have full force and effect within the territorial limits and other jurisdiction of home rule cities or counties. This section shall not preclude any city or county from enacting any ordinance containing penal language when otherwise authorized to do so by law.

(Emphasis added). Fargo argues that N.D.C.C. § 12.1–01–05 applies only to criminal offenses, not to noncriminal traffic offenses.

[¶ 8] The interpretation of N.D.C.C. § 12.1–01–05 presents a question of law. *See In re G.R.H.*, 2006 ND 56, ¶ 15, 711 N.W.2d 587. In *Simon v. Simon*, 2006 ND 29, ¶ 12, 709 N.W.2d 4, we summarized the rules of statutory construction:

> The primary objective in interpreting a statute is to determine the intent of the legislature by first looking at the language of the statute. *Amerada Hess Corp. v. State ex rel. Tax Comm'r*, 2005 ND 155, ¶ 12, 704 N.W.2d 8. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined in the code or unless the drafters clearly intended otherwise. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–09.1. If the language of a statute is clear and unambiguous, "the letter of the statute cannot be disregarded under the pretext of pursing its spirit." N.D.C.C. § 1–02–05. A statute is ambiguous if it is susceptible to different, rational meanings. *Amerada*, at

¶ 12. If the language is ambiguous or doubtful in meaning, the court may consider extrinsic aids, such as legislative history, to determine legislative intent. N.D.C.C. § 1–02–39.

■ [¶ 9] Although Fargo relies on the term "crimes" used in the title or headnote to N.D.C.C. § 12.1–01–05, the Legislature has told us that a "headnote may not be used to determine legislative intent or the legislative history for any statute." N.D.C.C. § 1–02–12. *See Jorgenson v. Agway, Inc.*, 2001 ND 104, ¶ 8, 627 N.W.2d 391; *State v. Rasmussen*, 524 N.W.2d 843, 846 n. 1 (N.D.1994). The word "offense," rather than the word "crimes," is used in the text of the statute. For purposes of Title 12.1, N.D.C.C., an "offense" is defined as "conduct for which a term of imprisonment *or* a fine is authorized by statute after conviction." N.D.C.C. § 12.1–01–04(20) (emphasis added). The word "or" is disjunctive in nature and ordinarily indicates an alternative between different things. *State ex rel Stenehjem v. FreeEats.com, Inc.*, 2006 ND 84, ¶ 14, 712 N.W.2d 828. This statutory definition comports with the plain, ordinary, and commonly understood meaning of the term "offense." *See, e.g., Merriam Webster's Collegiate Dictionary* 861 (11th ed.2003) ("an infraction of law"); *Black's Law Dictionary* 1110 (8th ed. 2004) ("A violation of the law; a crime, often a minor one"); 22 C.J.S. *Criminal Law* § 3, at 23 (2006) (" 'Offense' may comprehend every crime and misdemeanor, or may be used in a specific sense as synonymous with 'felony' or with 'misdemeanor,' as the case may be, or as signifying a crime of lesser grade, or an act not indictable, but punishable summarily or by the forfeiture of a penalty" (footnotes omitted)).

■ [¶ 10] Section 12.1–01–05, N.D.C.C., is clear and unambiguous. An "offense" is not limited to a violation of criminal law. An "offense" under N.D.C.C. § 12.1–01–05 includes noncriminal, as well as criminal, offenses "defined in [Title 12.1] or elsewhere by law." *See* N.D.C.C. § 39–06.1–02 ("Any person cited, in accordance with sections 39–07–07 and 39–07–08, for a traffic violation under state law or municipal ordinance, other than an offense listed in section 39–06.1–05, is deemed to be charged with a *noncriminal offense*." (emphasis added)). This interpretation of "offense" harmonizes the use of the same term in the home rule powers statute, N.D.C.C. § 40–05.1–06(9), which allows a home rule city to "define offenses . . . and provide penalties for violations thereof." Under this provision, Fargo is empowered to define and enact both criminal and noncriminal offenses. However, N.D.C.C. § 12.1–01–05 does not permit a home rule city to supersede criminal or noncriminal offenses defined by state law. A penalty that exceeds the limits delineated by equivalent state law supersedes state law. *Cf. City of Fargo v. Little Brown Jug, .468* N.W.2d 392, 396 (N.D. 1991) (city may impose penalty different from state law if the municipal penalty is *lesser* than the state law penalty for an equivalent statute).

■ [¶ 11] Fargo relies on past statements made by this Court that N.D.C.C. § 12.1–01–05 demonstrates the Legislature's intent "to uniformly apply criminal law throughout the state." *City of Bismarck v. Hoopman*, 421 N.W.2d 466, 469 (N.D.1988); *see also City of Bismarck v. Schoppert*, 450 N.W.2d 757, 758 (N.D. 1990); *City of Bismarck v. Nassif*, 449 N.W.2d 789, 794 (N.D.1989); *City of Grand Forks v. Cameron*, 435 N.W.2d 700, 702 (N.D.1989). However, in most of the cases in which this Court has mentioned N.D.C.C. § 12.1–01–05, the "offense" involved has been a violation of criminal law. *See City of Fargo v. Roberson*, 2001 ND

204, ¶ 6 n. 1, 636 N.W.2d 926 (unlawfully resisting an officer); *City of Grand Forks v. Mata,* 517 N.W.2d 626, 629 (N.D.1994) (driving while license revoked); *City of Bismarck v. Schoppert,* 469 N.W.2d 808, 809 (N.D.1991) (disorderly conduct); *Little Brown Jug,* 468 N.W.2d at 393 (sale of alcohol to minors); *Schoppert,* 450 N.W.2d at 757 (disorderly conduct); *City of Dickinson v. Gresz,* 450 N.W.2d 216, 220 (N.D. 1989) (retail theft-shoplifting); *Nassif,* 449 N.W.2d at 793–94 (disorderly conduct); *Cameron,* 435 N.W.2d at 702 (obstructing public officers in the discharge of their duties); *Hoopman,* 421 N.W.2d at 468 (actual physical control); *City of Valley City v. Berg,* 394 N.W.2d 690, 691 (N.D.1986) (actual physical control); *City of Dickinson v. Mueller,* 261 N.W.2d 787, 789–90 (N.D.1977) (selling alcohol to minor). In *State v. Cox,* 532 N.W.2d 384, 386 n. 4 (N.D.1995), this Court mentioned N.D.C.C. § 12.1–01–05 in conjunction with the noncriminal offense of "Noise Prohibited," but noted "[t]hat charge was dismissed, however, when the ordinance was determined to be void for impermissibly superseding state law contrary to NDCC § 12.1–01–05." Although the statements in *Hoopman, Schoppert,* 450 N.W.2d at 758, *Nassif,* and *Cameron* may have been unnecessarily limiting in scope, criminal offenses were the only offenses involved in those cases. "[G]eneral language in judicial opinions must be read in the context of the issues before a court and not in reference to circumstances different from what the court was then considering." *Vandall v. Trinity Hosps.,* 2004 ND 47, ¶ 12, 676 N.W.2d 88. This is the first time this Court has considered whether noncriminal municipal offenses may supersede state law.

▆▆▆▆ [¶ 12] Fargo also relies on two opinions of the Attorney General. In 1982 the Attorney General concluded that "[w]here a home rule city charter and ordinance provides for fees for violations of city ordinances regulating motor vehicles and traffic in amounts exceeding the limits stated in Section 39–06.1–06, N.D.C.C., the state law shall be superseded by the home rule city ordinance only within the jurisdiction of the city." N.D. Op. Atty Gen. 82–62. In 2001 the Attorney General opined that "a home rule city may permit the use of motorized scooters on sidewalks, notwithstanding N.D.C.C. §§ 39–10–52.1 and 12.1–01–05 as long as the city's home rule charter includes the necessary powers and those powers are properly implemented through city ordinances." N.D. Op. Atty Gen.2001–F–07. The Attorney General in the 2001 opinion concluded that N.D.C.C. § 12.1–01–05 applies only to criminal offenses, relying on this Court's statement in *Hoopman,* 421 N.W.2d at 469. "Formal opinions of the attorney general are entitled to respect, and courts should follow them if they are persuasive." *Ballensky v. Flattum–Riemers,* 2006 ND 127, ¶ 26, 716 N.W.2d 110. "However, Attorney General opinions are not binding upon this court and we will not follow them if they are inconsistent with the statutory interpretation that the court deems reasonable." *Christianson v. City of Bismarck,* 476 N.W.2d 688, 691 (N.D.1991). The 1982 opinion does not mention N.D.C.C. § 12.1–01–05, and the 2001 opinion simply relies on *Hoopman's* statement of legislative intent. The Attorney General's opinions on the issue are not persuasive, and we decline to follow them.

## III

[¶ 13] Because we conclude N.D.C.C. § 12.1–01–05 precludes Fargo from imposing fees for noncriminal traffic offenses that exceed the limits set forth for equivalent violations in N.D.C.C. § 39–06.1–06, it is unnecessary to address the other issues

raised. We answer the certified question "no."

[¶ 14] WILLIAM A. HERAUF, D.J., DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.

I concur in the result, GERALD W. VANDE WALLE, C.J.

[¶ 15] The Honorable WILLIAM A. HERAUF, D.J., sitting in place of KAPSNER, J., disqualified.