2009 ND 150

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Lori Lee BROWN, Defendant and Appellant.**

**No. 20080257.**

Supreme Court of North Dakota.

Aug. 18, 2009.

Rehearing Denied Sept. 16, 2009.

Charles Justin Sheeley (argued), Assistant State's Attorney, and Kara Helgeson (on brief), third-year law student, Fargo, N.D., for plaintiff and appellee.

Jonathan T. Garaas, Garaas Law Firm, Fargo, N.D., for defendant and appellant.

Paul Raymond Emerson (on brief), Assistant Attorney General, Office of Attorney General, Bismarck, N.D., amicus curiae.

KAPSNER, Justice.

[¶ 1] Lori Brown appeals from a criminal judgment finding she violated the Cass County Animal Control Ordinance ("the Ordinance"). We affirm, concluding the Ordinance does not constitute an unconstitutional delegation of legislative authority; the Ordinance does not exceed the county's statutory authority; the Ordinance is not unconstitutionally overbroad or vague; the information satisfied the applicable procedural requirements; and Brown was not entitled to a jury trial.

I

[¶ 2] Brown and Frances Mayer are neighbors in a rural area of Cass County, and their homes are approximately 100 feet apart. Mayer testified that Brown keeps three large dogs on her property, and that the dogs bark excessively. Mayer also testified that, on October 20, 2007, all three of the dogs barked non-stop for longer than an hour. On that occasion, Mayer videotaped the barking dogs and the tape was admitted into evidence at trial.

[¶ 3] On the morning of October 24, 2007, the dogs were again barking, and Mayer called Deputy Sheriff Greg Dawkins of the Cass County Sheriff's Office to report the dogs. Deputy Dawkins traveled to Mayer's home and, while parked on the township road next to Mayer's home, heard the dogs bark continually for five minutes. Deputy Dawkins and Mayer then stood outside Mayer's home for approximately thirty minutes, and the dogs barked the entire time.

[¶ 4] On December 18, 2007, Brown was issued a citation for violating the Ordinance. Brown filed numerous motions to dismiss, challenging the validity of the Ordinance and the procedures employed, and demanded a jury trial. The district court rejected Brown's assertions that the charging instruments were defective; that the Ordinance was invalid, superseded by state law, or unconstitutional; that Cass County's Home Rule Charter was defective; that her dogs were part of an agricultural operation which could not be declared a nuisance; and that she was entitled to a jury trial.

[¶ 5] The case was tried to the district court, which found Brown's dogs had barked continuously and excessively on October 20 and 24, 2007, thereby constituting a public nuisance under the Ordinance. The court found Brown had committed an infraction under the Ordinance and ordered her to pay a fifty dollar fine. Brown appealed.

II

[¶ 6] Brown contends that the Ordinance is unconstitutional, arguing "North Dakota's legislative power cannot be delegated to other political subdivisions" and only the state legislature can create a crime. Brown's arguments demonstrate a basic misunderstanding of the law of political subdivisions in this state.

[¶ 7] In support of her sweeping assertions, which would essentially wipe out most, if not all, county and municipal ordinances in this state, Brown cites to cases expressing the well-settled general princi-

ple that there are constitutional limitations upon delegation of legislative authority. Every case cited by Brown, however, addressed the legislature's power to delegate legislative authority to executive branch agencies or officials, or private persons, organizations, or cooperatives. *See Kelsh v. Jaeger*, 2002 ND 53, 641 N.W.2d 100; *MCI Telecomm. Corp. v. Heitkamp*, 523 N.W.2d 548 (N.D.1994); *Stutsman County v. State Historical Soc'y*, 371 N.W.2d 321 (N.D.1985); *Montana–Dakota Utils. Co. v. Johanneson*, 153 N.W.2d 414 (N.D.1967); *Anderson v. Peterson*, 78 N.D. 949, 54 N.W.2d 542 (1952); *State ex rel. City of Fargo v. Wetz*, 40 N.D. 299, 168 N.W. 835 (1918); *State ex rel. Miller v. Taylor*, 27 N.D. 77, 145 N.W. 425 (1913); *State ex rel. Rusk v. Budge*, 14 N.D. 532, 105 N.W. 724 (1905); *People v. Grant*, 242 A.D. 310, 275 N.Y.S. 74 (1934). Brown cites no authority suggesting the legislature may not delegate legislative power to the governing bodies of political subdivisions, which are themselves legislative bodies with the power to enact ordinances within their local jurisdiction.

[¶ 8] In fact, some of the cases cited by Brown expressly recognize that limitations on delegation of legislative authority are not all-encompassing, stating that legislative powers may not be delegated "[e]xcept as otherwise provided in" or "[u]nless expressly authorized by" the state constitution. *Kelsh*, 2002 ND 53, ¶ 21, 641 N.W.2d 100; *MCI*, 523 N.W.2d at 554; *Stutsman County*, 371 N.W.2d at 327. This Court has acknowledged that the legislature may delegate "[e]ven purely legislative powers" to political subdivisions if authorized to do so by the constitution. *Southern Valley Grain Dealers Ass'n v. Board of County Comm'rs*, 257 N.W.2d 425, 434 (N.D.1977); *Ralston Purina Co. v. Hagemeister*, 188 N.W.2d 405, 410 (N.D. 1971). The constitution empowers the leg-

islature to provide for the establishment and government of political subdivisions, with such powers as provided by law, and provides for home rule if adopted by a county or city. N.D. Const. art. VII, §§ 2 and 6. Cass County has adopted a home rule charter in accordance with N.D. Const. art. VII, § 6. Under N.D. Const. art. VII, §§ 2 and 6, the legislature may delegate legislative powers, including the authority to create criminal penalties for violations of ordinances, to a home rule county. *See* N.D.C.C. §§ 11–09.1–05(5) and 11–09.1–13.

[¶ 9] We conclude the Ordinance does not constitute an unconstitutional delegation of legislative authority.

## III

[¶ 10] Brown next contends that the legislature "has statutorily prohibited the county from attempting to regulate dogs as public nuisances."

[¶ 11] The Cass County Animal Control Ordinance provides, in part, that "[a]ny animal which barks, whines, howls or makes other sounds common to its species in an excessive or continuous manner" is a public nuisance. The Ordinance further provides that "[n]o person shall own or harbor within the boundaries of Cass County a public nuisance as defined in this ordinance." A first offense under the Ordinance is an infraction carrying a fine of fifty dollars.

[¶ 12] Brown contends the Ordinance exceeds the authority conferred upon home rule counties by N.D.C.C. § 11–09.1–05(5), which provides that the county may:

Provide for the adoption, amendment, repeal, initiative, referral, enforcement, and civil and criminal penalties for violation of ordinances, resolutions, and regulations to carry out its governmental and

proprietary powers and to provide for public health, safety, morals, and welfare. However, this subsection does not confer any authority to regulate any industry or activity which is regulated by state law or by rules adopted by a state agency. Brown urges a broad interpretation of the second sentence of the subsection, contending the state has "usurped the subject area, having previously created state law or regulations regarding dog activities." In support of her argument, Brown relies upon N.D.C.C. § 42–03–01, which provides that "[a]ny dog that habitually molests a person traveling peaceably on the public road or street is a public nuisance." Brown contends that, because the state has defined "dog activities" which constitute a public nuisance, the county is precluded by N.D.C.C. § 11–09.1–05(5) from declaring any other dog-related activity a public nuisance.

[¶ 13] The broad interpretation of the second sentence of N.D.C.C. § 11–09.1–05(5) urged by Brown, which would preclude action by the county if the state has exercised any authority within a broad subject area by state law or rule, would virtually eliminate the county's authority granted in the first sentence of N.D.C.C. § 11–09.1–05(5) to enact ordinances to carry out its governmental and proprietary powers and to provide for the public health, safety, morals, and welfare within its jurisdiction. It is hard to imagine many subject areas which are not touched in some way by the myriad state laws and rules currently in effect. If, as Brown suggests, the county is powerless if any state law or rule affects the subject area in question, there would appear to be very little subject matter left upon which the county may act. In effect, Brown's interpretation of the statute would with one hand purportedly give the county authority to enact ordinances to carry out its govern-

mental and proprietary powers and to provide for public health, safety, morals, and welfare, but would with the other hand wipe out virtually all vestiges of that authority.

[¶ 14] Furthermore, Brown's analysis wholly ignores other provisions in N.D.C.C. ch. 11–09.1 which clearly indicate the legislature envisioned there would be instances when an ordinance adopted by a home rule county would apply to the same subject matter as, and conflict with, state law. The legislature expressly provided that, in such cases, the county ordinance would ordinarily supersede state law:

> The charter and the ordinances made pursuant to the charter in county matters must be liberally construed to supersede within the territorial limits and jurisdiction of the county any conflicting state law except for any state law as it applies to cities or any power of a city to govern its own affairs, without the consent of the governing body of the city.

N.D.C.C. § 11–09.1–04. In addition, the concluding paragraph of N.D.C.C. § 11–09.1–05, the code provision containing the disputed language in subsection (5) relied upon by Brown, provides:

> The people of all counties coming within this chapter have the full right of self-government in all matters within the powers enumerated in this chapter. The statutes of this state, so far as applicable, continue to apply to counties, except as superseded by the charters of the counties or by ordinances passed pursuant to the charters.

These statutes would be rendered meaningless if, as Brown suggests, N.D.C.C. § 11–09.1–05(5) prohibits the county from enacting any ordinance if there is any state law or rule addressing the same subject matter. The result urged by Brown would also defy the directive of the people as

expressed in N.D. Const. art. VII, § 1, that "[t]he purpose of this article is to provide for maximum local self-government by all political subdivisions with a minimum duplication of functions."

■ [¶ 15] We summarized the standards guiding our interpretation of statutes in *In re M.W.*, 2009 ND 55, ¶ 6, 764 N.W.2d 185 (quoting *State v. Fasteen*, 2007 ND 162, ¶ 8, 740 N.W.2d 60) (citations omitted):

Interpretation of a statute is a question of law fully reviewable on appeal. Our primary goal in statutory construction is to ascertain the intent of the legislature, and we first look to the plain language of the statute and give each word of the statute its ordinary meaning. When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. If, however, the statute is ambiguous or if adherence to the strict letter of the statute would lead to an absurd or ludicrous result, a court may resort to extrinsic aids, such as legislative history, to interpret the statute. A statute is ambiguous if it is susceptible to meanings that are different, but rational. We presume the legislature did not intend an absurd or ludicrous result or unjust consequences, and we construe statutes in a practical manner, giving consideration to the context of the statutes and the purpose for which they were enacted.

Furthermore, "[s]tatutes relating to the same subject matter shall be construed together and should be harmonized, if possible, to give meaningful effect to each, without rendering one or the other useless." *Public Serv. Comm'n v. Minnesota Grain, Inc.*, 2008 ND 184, ¶ 20, 756 N.W.2d 763 (quoting *North Dakota Fair Hous. Council, Inc. v. Peterson*, 2001 ND 81, ¶ 36, 625 N.W.2d 551); *see also Martin*

*v. Stutsman County Soc. Servs.*, 2005 ND 117, ¶ 13, 698 N.W.2d 278; *North Dakota Dep't of Human Servs. v. Ryan*, 2003 ND 196, ¶ 11, 672 N.W.2d 649.

■ [¶ 16] We must therefore construe the language of the second sentence of N.D.C.C. § 11–09.1–05(5) in the context of the overall statutory scheme, including the provisions in N.D.C.C. ch. 11–09.1 which give broad authority to a home rule county to enact ordinances and which direct that such ordinances will generally supersede any conflicting state law. In doing so, we conclude that the broad interpretation of N.D.C.C. § 11–09.1–05(5) proposed by Brown would lead to an absurd result, and would render other provisions in N.D.C.C. ch. 11–09.1 meaningless. We therefore must attempt to ascertain the intent of the legislature through extrinsic aids, including legislative history. *See M.W.*, 2009 ND 55, ¶ 6, 764 N.W.2d 185; *Fasteen*, 2007 ND 162, ¶ 8, 740 N.W.2d 60.

[¶ 17] The original 1985 enactment of N.D.C.C. ch. 11–09.1 was intended to implement the 1982 amendment of N.D. Const. art. VII, which allowed extension of home rule authority to counties. *See* North Dakota Legislative Council, Report to the Forty–Ninth Legislative Assembly 183 (1985). Following a study by the Interim Committee on Political Subdivisions "B," House Bill 1083 was introduced as recommended by the Committee. As originally introduced, H.B. 1083 did not include the second sentence in N.D.C.C. § 11–09.1–05(5) limiting the county's authority to regulate industries or activities regulated by state law, but did include the provisions granting counties broad authority to enact ordinances and declaring those ordinances would ordinarily supersede conflicting state law. The Interim Committee report advised:

House Bill No. 1083 provides that the home rule charter and ordinances made

pursuant to the charter in county matters must be liberally construed to supersede within the territorial limits and jurisdiction of the county any conflicting state law except for any state law as it applies to cities or any power of a city to govern its own affairs, without the consent of the governing body of the city.

North Dakota Legislative Council, Report to the Forty–Ninth Legislative Assembly 184 (1985).

[¶ 18] The second sentence of N.D.C.C. § 11–09.1–05(5) was proposed as an amendment to H.B. 1083 after energy industry representatives expressed concerns to the Senate Political Subdivisions Committee about allowing county ordinances to supersede state law in matters involving industries which were already heavily regulated by both state and federal law. In response, the Legislative Council prepared the amendment adding language to N.D.C.C. § 11–09.1–05(5) restricting the county's authority to regulate industries or activities already regulated by state law.

[¶ 19] A 1990 opinion of the Attorney General addressed the legislative history of the amendment and concluded that the legislature only intended to limit the county's authority to enact ordinances regulating industries or activities already subject to "substantial state control, management, or supervision":

John Walstad, representing the Legislative Council, explained the addition of the second sentence to what is now N.D.C.C. 11–09.1–05(5) as follows:

The concern here was that the county could get into reclamation, siting, and things like that that are already regulated under state law. This would provide that home rule counties would have no authority in regulatory areas where state law or rules adopted by a state agency already govern the activity or industry.

*Hearing on H. 1083 Before the Senate Political Subdivisions Comm.*, 49th Leg., (March 15, 1985) (statement of Mr. Walstad). No further legislative history surrounding the adoption of this second sentence to N.D.C.C. 11–09.1–05(5) is available.

Mr. Walstad's testimony before the Senate Political Subdivisions Committee concerning the addition of the second sentence to what is now N.D.C.C. 11–09.1–05(5) involves matters which are subject to substantial state management and control. Reclamation and siting matters are handled by the Public Service Commission and are subject to substantial state administrative regulation. Indeed, the ordinary sense definition of the term "regulate" is defined as bringing under the control of law or constituted authority a particular subject or industry. *Webster's New Collegiate Dictionary* at 974 (1975).

It is my opinion, based upon the use of the term "regulate" within N.D.C.C. 11–09.1–05(5) and the limited legislative history available concerning the addition of that language, that the Legislature only intended to prevent a home rule county from addressing an activity or industry which is subject to substantial state control, management, or supervision such as matters involving the Public Service Commission. By using the term "regulate" the Legislature did not intend to forbid a home rule county from regulating an industry or activity already addressed by state law.

This conclusion complies with the spirit of the home rule authority bestowed upon a home rule county. The last paragraph to N.D.C.C. 11–09.1–05 declares that a home rule county should have "the full right of self-government in all matters within the powers enumerated in this chapter." If a home rule

county cannot enact an ordinance which addresses a subject already discussed or addressed by state law, although it is not subject to substantial or significant regulation by state law or state administrative rules, the purpose of the home rule authority would be thwarted.

N.D. Op. Att'y Gen. 90–21, at 2–3.

[¶ 20] Formal opinions of the attorney general are entitled to respect, and courts should follow them if they are persuasive. *Baukol Builders, Inc. v. County of Grand Forks*, 2008 ND 116, ¶ 28, 751 N.W.2d 191; *Riemers v. City of Grand Forks*, 2006 ND 224, ¶ 11, 723 N.W.2d 518. Although not binding on the courts, an attorney general's opinion nevertheless has an important bearing upon the construction and interpretation of a statute. *Baukol Builders*, at ¶ 26; *Edinger v. Governing Auth. of Stutsman County Corr. Ctr.*, 2005 ND 79, ¶ 13, 695 N.W.2d 447. We agree with the analysis and reasoning of the attorney general's opinion and find it persuasive.

[¶ 21] We conclude that N.D.C.C. § 11–09.1–05(5) limits the county's authority to enact ordinances in two instances: (1) when there is an explicit state law or rule restraining the county's authority, *see, e.g.*, N.D.C.C. § 11–09.1–05(2) (county ordinances may not supersede state law in certain taxation matters); *see also Sauby v. City of Fargo*, 2008 ND 60, ¶ 10, 747 N.W.2d 65; or (2) when the industry or activity involved is already subject to substantial state control through broad, encompassing statutes or rules.

[¶ 22] Applying that standard to the Ordinance in this case, we conclude there is no explicit statutory prohibition restraining the county's authority to enact a dog-barking ordinance, and the "industry or activity" involved is not subject to substantial state control through broad, encompassing statutes or rules. While the state legislature has recognized certain dog-related activity as constituting a public nuisance, that statute does not purport to create an exclusive definition and does not preclude political subdivisions from designating other dog-related activity as a public nuisance. *See* N.D.C.C. § 42–03–01. Nor is there any showing that the legislature has enacted broad, encompassing statutes exerting substantial control over "dog activities." The state statute regulates only one type of dog-related activity: molesting persons on a public street. The portion of the Ordinance challenged in this case regulates a completely different type of dog-related activity: excessive or continuous barking. We conclude that N.D.C.C. § 11–09.1–05(5) did not limit the county's authority to enact the Ordinance.

[¶ 23] Brown also suggests that N.D.C.C. § 12.1–01–05 precludes the county from creating a crime involving dog activities:

No offense defined in this title or elsewhere by law shall be superseded by any city or county ordinance, or city or county home rule charter, or by an ordinance adopted pursuant to such a charter, and all such offense definitions shall have full force and effect within the territorial limits and other jurisdiction of home rule cities or counties. This section shall not preclude any city or county from enacting any ordinance containing penal language when otherwise authorized to do so by law.

[¶ 24] The Ordinance involved in this case does not supersede N.D.C.C. § 42–03–01. That statute still has full force and effect within Cass County. The Ordinance merely recognizes a different type of conduct which will also be treated as a public nuisance within the territorial limits of the county, but does not preclude or conflict with application of the state law. This

distinguishes this case from *Sauby*, 2008 ND 60, ¶ 10, 747 N.W.2d 65, in which we held that an ordinance which created greater fines for traffic offenses than provided for by state law conflicted with and superseded state law in violation of N.D.C.C. § 12.1–01–05.

[¶ 25] We conclude that the Ordinance is not invalid under N.D.C.C. §§ 11–09.1–05(5) or 12.1–01–05.

IV

[¶ 26] Brown contends the Ordinance is unconstitutional because it is overbroad or vague.

[¶ 27] In *City of Belfield v. Kilkenny*, 2007 ND 44, 729 N.W.2d 120, we addressed overbreadth and vagueness challenges in the context of a municipal animal control ordinance markedly similar to Cass County's ordinance. We explained the application of the two doctrines:

First, the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when "judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 612–615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Second, even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests. *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

*Kilkenny*, at ¶ 9 (quoting *City of Chicago v. Morales*, 527 U.S. 41, 52, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999)).

A

[¶ 28] Brown contends the Ordinance is overbroad because it reaches constitutionally protected conduct.

[¶ 29] We summarized the overbreadth doctrine in *City of Fargo v. Salsman*, 2009 ND 15, ¶ 25, 760 N.W.2d 123 (quoting *City of Fargo v. Stensland*, 492 N.W.2d 591, 593 (N.D.1992)):

The doctrine of overbreadth prohibits the law from criminalizing constitutionally protected activity. *State v. Tibor*, 373 N.W.2d 877, 880 (N.D.1985)[.] "A governmental purpose to control or prevent activities constitutionally subject to state regulations may not be achieved by means which sweep unnecessarily broad and thereby invade the area of protected freedoms." *Zwickler v. Koota*, 389 U.S. 241, 250, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); cited in *State v. Tibor, supra*. In reviewing overbreadth claims, we first consider whether the statute infringes upon a "substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

We have cautioned that the application of the overbreadth doctrine to invalidate legislation is " 'manifestly, strong medicine' which should be used 'sparingly and only as a last resort.' " *McCrothers Corp. v. City of Mandan*, 2007 ND 28, ¶ 27, 728 N.W.2d 124 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)); *see also Salsman*, at ¶ 25.

[¶ 30] The party challenging the constitutionality of an ordinance has the burden of proving its constitutional infirmity. *See Salsman*, 2009 ND 15, ¶ 23, 760 N.W.2d 123. Thus, Brown has the burden to demonstrate that the Ordinance infringes upon a substantial amount of constitutionally protected conduct. *See id.* at

¶ 25. Without citation to any authority, Brown asserts that an owner's right to "use or possess personal property, in this case, dogs" is a "clearly protected freedom." We rejected that premise in *Kilkenny*, 2007 ND 44, ¶ 9, 729 N.W.2d 120, noting that the conduct prohibited by the ordinance in that case "does not reach a substantial amount of constitutionally protected conduct." We also recognized that "[p]roperty in dogs is of an imperfect or qualified nature and they may be subjected to peculiar and drastic police regulations by the state without depriving their owners of any federal right." *Id.* (quoting *Nicchia v. New York*, 254 U.S. 228, 230, 41 S.Ct. 103, 65 L.Ed. 235 (1920)).

[¶ 31] Brown has not cited a single case holding that an animal control ordinance regulating excessive or continuous barking by dogs is unconstitutionally overbroad. Courts in other jurisdictions which have reached the issue have held that similar dog-barking ordinances do not reach constitutionally protected conduct and are not unconstitutionally overbroad. *See City of Sarasota v. Calhoun*, 685 So.2d 1338, 1340 (Fla.Dist.Ct.App.1996) ("[n]o construction of First Amendment case law suggests that dog barking ever raises any legitimate, substantive constitutional issue, so the circuit court's determination that the ordinance in question is overbroad misapplies an important legal principle"); *Lear v. State*, 753 S.W.2d 737, 739 (Tex. App.1988) ("[b]ecause the enactment prohibiting the harboring of a dog that makes frequent or long continued noise that disturbs persons of normal nervous sensibilities does not reach constitutionally protected conduct, the overbreadth challenge fails").

[¶ 32] We conclude the Ordinance is not unconstitutionally overbroad.

## B

[¶ 33] Brown also argues the Ordinance is unconstitutionally vague. We summarized the vagueness doctrine in *Kilkenny*, 2007 ND 44, ¶ 10, 729 N.W.2d 120:

All laws must meet two requirements to survive a void-for-vagueness challenge: (1) the law must create minimum guidelines for the reasonable police officer, judge, or jury charged with enforcement of the statute; and (2) the law must provide a reasonable person with adequate and fair warning of the proscribed conduct.

This Court will "review the statute to determine if these two dictates are clear under a 'reasonable person' standard." *Id.* (quoting *State v. Eldred*, 1997 ND 112, ¶ 24, 564 N.W.2d 283).

[¶ 34] In *Kilkenny*, we upheld a municipal ordinance employing operative language virtually identical to the language in the Ordinance in this case. The Belfield municipal ordinance declared that "[e]xcessive, continuous, or untimely barking" by a dog constituted a nuisance. The Ordinance in this case provides that an animal that "barks ... in an excessive or continuous manner" is a public nuisance. In *Kilkenny*, 2007 ND 44, ¶¶ 20–25, 729 N.W.2d 120, we addressed at length the commonly understood meaning of the terms "excessive" and "continuous" as used in an animal control ordinance. We concluded: "[b]ecause the words excessive, continuous, or untimely have come within the knowledge and understanding of dog owners and their neighbors, they are not unconstitutionally vague. Additional objective standards are unnecessary to warn citizens of the prohibited conduct." *Id.* at ¶ 28.

[¶ 35] Our holding in *Kilkenny* is controlling in this case. The Ordinance is not unconstitutionally vague.

## V

[¶ 36] Brown challenges the validity of the charging documents employed in this case. Initially, Brown was issued a citation charging a first violation of the Ordinance, an infraction. On January 25, 2008, after Brown had moved for dismissal of the charge, the state's attorney filed an "Information In Lieu of Cass County Animal Control Ordinance Violation Citation # 0297." The information contained a statement of the offense, the relevant dates, the names of witnesses, citation to the applicable law, and the signature of an assistant state's attorney.

[¶ 37] Brown alleges the citation and the information *do not satisfy* the constitutional or statutory requirements for a charging instrument because they were not subscribed and sworn to under oath. The State alleges the information complies with all of the requirements for a criminal information as enumerated in N.D.R.Crim.P. 7(c)(1).

[¶ 38] Under N.D.C.C. § 11–09.1–13, a county which has adopted a home rule charter "may impose a penalty for a violation of an ordinance through a citation, a criminal complaint, or an information through the district court in the county where the offense occurred." Although initially a citation was issued to Brown, an information charging Brown with violating the ordinance was subsequently filed and is the controlling charging instrument in this case.

[¶ 39] Rule 7(c)(1), N.D.R.Crim. P., sets out the required components of a criminal information:

The indictment or the information must name or otherwise identify the defendant, and must be a plain, concise, and definite written statement of the essential facts constituting the elements of the offense charged. *It must be signed by the prosecuting attorney.* All prosecutions except appeals from municipal courts must be carried on in the name and by the authority of the State of North Dakota and must conclude "against the peace and dignity of the State of North Dakota." Except as required by this rule, the indictment or information need not contain a formal commencement, a formal conclusion, or any other matter not necessary to the statement. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specific means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law which the defendant is alleged to have violated. (Emphasis added.)

The rule requires only that the information be signed by the prosecuting attorney, and does not require that it be sworn under oath.

[¶ 40] Brown contends, however, that the rule is not the applicable standard, because N.D.C.C. § 29–01–13(4) requires more:

An "information" is an accusation in writing, in form and substance like an indictment for the same offense, charging a person with a crime or public offense, *signed and verified by some person* and presented to the district court and filed in the office of the clerk of said court. (Emphasis added.)

"Verified" is defined as "sworn to before an officer authorized to administer oaths." N.D.C.C. § 1–01–42. Brown therefore contends the information must be signed and sworn to upon oath.

[¶ 41] In this case, there is a clear conflict between the procedural rule and the

procedural statute which cannot be harmonized. Under N.D. Const. art. VI, § 3, this Court has the ultimate authority to promulgate rules of procedure to be followed in the courts of this state. The legislature has recognized that any statute relating to procedure in civil or criminal actions may be superseded by rules promulgated by this Court:

> All statutes relating to pleadings, practice, and procedure in civil or criminal actions, remedies, or proceedings, enacted by the legislative assembly, have force and effect only as rules of court and remain in effect unless and until amended or otherwise altered by rules promulgated by the supreme court.

N.D.C.C. § 27–02–09; *see also* N.D.C.C. § 27–02–08 (the supreme court has the authority to make all rules of pleading, practice, and procedure).

[¶ 42]  This Court addressed the constitutional tension between procedural statutes and procedural rules in *Traynor v. Leclerc,* 1997 ND 47, ¶ 8, 561 N.W.2d 644:

> Our state constitution's creation of three branches of government apportions the different classes of power, implicitly excluding each branch of state government from overriding the functions of the other branches. *State v. Hanson,* 558 N.W.2d 611 n. 1 (N.D. 1996). However, "[w]e have recognized that there is an 'interplay between statutory procedures and rules promulgated by this court.'" *Id.* at 613, (quoting [*City of Fargo v.] Ruether,* 490 N.W.2d [481,] 483 [ (N.D.1992) ] ). While this court has "final authority over procedural rules," *State v. Knudson,* 499 N.W.2d 872, 874 (N.D.1993), "statutorily enacted rules of procedure are in effect until superseded or amended by our court," *Gegelman v. Reiersgaard,* 273 N.W.2d 703, 706 (N.D.1979). *See also* NDCC 27–02–09. Under N.D. Const., Art. VI,

§ 3, "a procedural rule adopted by this court must prevail in a conflict with a statutory procedural rule." *Hanson,* 558 N.W.2d at 615.

[¶ 43]  Under the circumstances in this case, there is a direct conflict between the requirements for an information as outlined respectively in N.D.R.Crim.P. 7(c)(1) and N.D.C.C. § 29–01–13(4). Under N.D. Const. art. VI, § 3, the provisions of the rule prevail. Accordingly, we conclude that the signature of the prosecuting attorney on the information is sufficient, and the information satisfies the requirements of N.D.R.Crim.P. 7(c)(1).

## VI

[¶ 44]  Brown argues that she was entitled to a jury trial on the charged offense under N.D. Const. art. I, § 13. She contends that she repeatedly demanded a jury trial at all appropriate times in the proceedings in district court, and that the district court committed reversible error when it failed to provide a jury trial.

[¶ 45]  Article I, § 13, N.D. Const., provides that "[t]he right of trial by jury shall be secured to all, and remain inviolate." We have explained that the constitutional provision is not absolute, and does not guarantee a jury trial in all cases:

> This provision neither enlarges nor restricts the right to a jury trial, but merely preserves the right as it existed at the time of the adoption of our constitution. This provision preserves the right to a jury trial in all cases in which it could have been demanded as a matter of right at common law at the time of the adoption of our constitution.

*State v. $17,515.00 in Cash Money,* 2003 ND 168, ¶ 6, 670 N.W.2d 826 (citations omitted); *see also In re Anderson,* 2007 ND 50, ¶ 16, 730 N.W.2d 570; *Peters–Riemers v. Riemers,* 2002 ND 72, ¶ 5, 644

N.W.2d 197; *City of Bismarck v. Fettig,* 1999 ND 193, ¶ 7, 601 N.W.2d 247; *City of Bismarck v. Altevogt,* 353 N.W.2d 760, 764 (N.D.1984); *General Elec. Credit Corp. v. Richman,* 338 N.W.2d 814, 817 (N.D.1983). As we noted in *Altevogt,* at 764, "[t]he Compiled Laws of the Territory of Dakota (1877), the law of the territory just prior to and at the time that North Dakota became a state and adopted its constitution in 1889, defines the right to trial by jury as it existed under such law prior to and at the time of the adoption of Art. I, § 13." *See also $17,515.00 in Cash Money,* at ¶ 6.

[¶ 46] In support of her assertion of a right to a jury trial in this case, Brown contends that, at the time of statehood, city justices were required to provide a jury trial in a criminal case if the potential penalty was a fine greater than twenty dollars or imprisonment for a period of longer than ten days. The relevant statute provided, in pertinent part:

> Cases before the city justice arising under the city ordinances shall be tried and determined by the justice without the intervention of a jury except in cases where under the provisions of the ordinances of the city imprisonment for a longer period than ten days is made a part of the penalty, or the maximum fine shall be twenty dollars or over, and the defendant shall demand a trial by jury before the commencement of such trial.

Compiled Laws of the Territory of Dakota § 937 (1887). Brown contends that, because the Ordinance in this case authorizes a fine of fifty dollars for a first offense, her right to a jury trial is guaranteed under N.D. Const. art. I, § 13.

[¶ 47] Resolution of this issue requires an analysis of the historical context. At the time the constitution was adopted in 1889, our territorial law recognized only two categories of criminal offenses: felonies and misdemeanors. Compiled Laws

of the Territory of Dakota §§ 6203 and 7027 (1887). A felony was a crime which carried a potential penalty of death or imprisonment in the territorial prison. *Id.* at §§ 6204 and 7028. Every other crime was categorized as a misdemeanor, and, unless otherwise specified, carried maximum potential penalties of imprisonment in a county jail for up to one year, a fine of up to $500, or both. *Id.* at §§ 6205, 6213, and 7029.

[¶ 48] At the time the constitution was adopted, there were no infraction-level offenses recognized under territorial law. In 1975, the legislature created a new, lower level of criminal offense, denoted as an infraction, with its own procedures and penalty provisions. *See* 1975 N.D. Sess. Laws ch. 116, § 23. The current relevant statutory provision, N.D.C.C. § 12.1–32–01, lists the various categories of criminal offenses, including:

> Infraction, for which a maximum fine of five hundred dollars may be imposed. Any person convicted of an infraction who has, within one year prior to commission of the infraction of which the person was convicted, been previously convicted of an offense classified as an infraction may be sentenced as though convicted of a class B misdemeanor. If the prosecution contends that the infraction is punishable as a class B misdemeanor, the complaint shall specify that the offense is a misdemeanor.

N.D.C.C. § 12.1–32–01(7). Under the statute, incarceration is not a sentencing option for conviction of an infraction unless it is a second offense within one year and the prosecution expressly pleads the offense as a misdemeanor rather than an infraction. N.D.C.C. § 12.1–32–01(7); *State v. Shaver,* 294 N.W.2d 883, 887–88 (N.D.1980). The Ordinance at issue in this case likewise provides that a second of-

fense within one year shall be classified as a class B misdemeanor.

[¶ 49] We also note that, under territorial law, a defendant sentenced to pay a fine for violation of a felony or misdemeanor could be sentenced to imprisonment until the fine was paid. Compiled Laws of the Territory of Dakota §§ 6168, 6173, and 7471 (1887). Similarly, our current law provides that, if a defendant convicted of·a felony or misdemeanor fails to pay an ordered fine and cannot show the default is excusable, the court may sentence the defendant to a term of imprisonment. N.D.C.C. § 12.1–32–05(3). The statute does not, however, authorize imprisonment for failure to pay a fine upon conviction of an infraction.

[¶ 50] When creating the infraction-level offense in 1975, the legislature provided for certain variances from the procedures employed in other criminal cases. *See* 1975 N.D. Sess. Laws ch. 116, § 28; N.D.C.C. § 12.1–32–03.1. The legislature expressly provided that a person charged with an infraction is not entitled to counsel furnished at public expense and has no right to a jury trial unless it is a second offense charged as a misdemeanor carrying a potential sentence of imprisonment. N.D.C.C. § 12.1–32–03.1(1). It is clear that the legislature intended to create an entirely new category of lesser criminal offenses with its own unique procedural requirements.

[¶ 51] In other instances when similarly presented with a case involving a newly created statutory procedure or proceeding, this Court has held there is no right to a jury trial under N.D. Const. art. I, § 13. *See Anderson*, 2007 ND 50, ¶¶ 13–19, 730 N.W.2d 570; *$17,515.00 in Cash Money*, 2003 ND 168, ¶¶ 5–11, 670 N.W.2d 826. The Court explained in *$17,515.00 in Cash Money*, at ¶¶ 10–11:

It is axiomatic that, because there was no available action in this state for forfeiture of proceeds from illegal drug transactions at the time the constitution was adopted, there was no right to a jury trial in such an action. The legislature created a new statutory proceeding when, nearly a century after adoption of the constitution, it authorized forfeiture of property, including money, used in illegal drug transactions.... We agree with the rationale of the Supreme Court of Georgia in *Swails [v. State*, 263 Ga. 276, 431 S.E.2d 101,] 103 [ (Ga.1993) ] (citations omitted):

The provision of our State Constitution regarding the right to jury trial "means that it shall not be taken away, *as it existed in 1798*, when the [first] instrument was adopted, *and not that there must be a jury in all cases*. New forums may be erected, and *new remedies provided*, accommodated to the ever shifting state of society." *Flint River Steamboat Co. v. Foster*, 5 Ga. 194, 207–208 (1848).... "[T]here is no state constitutional right to a jury trial with respect to *proceedings of statutory origin unknown at the time the Georgia Constitution was adopted*." *Benton v. Ga. Marble Co.*, 258 Ga. 58, 66(4), 365 S.E.2d 413 (1988). Since the provisions of OCGA § 16–13–49 create a statutory proceeding which was unknown in 1798, it follows that the General Assembly was authorized to provide for a bench trial in that proceeding and that the trial court in the instant case correctly overruled appellant's challenge to the constitutionality of OCGA § 16–13–49(*o*)(5) and (p)(6).

The forfeiture provisions of N.D.C.C. ch. 19–03.1 create a statutory proceeding and new remedies which were unknown at the time our constitution was adopted in 1889. Accordingly, there is no right

under N.D. Const. art. I, § 13, to a jury trial in proceedings under the statute. *See also Anderson,* at ¶ 19 (when the legislature "create[s] a statutory proceeding that was unknown at the time our constitution was adopted in 1889 ... there is no right under article I, § 13, to a jury trial").

[¶ 52]  When it created infraction-level offenses in 1975, the legislature created a new statutory category and procedure which did not exist at the time the constitution was adopted in 1889.  Consequently, we conclude that a person charged with violating an infraction-level offense, including a county ordinance creating an infraction-level offense, which carries no possibility of imprisonment, is not entitled to a jury trial under N.D. Const. art. I, § 13.

### VII

[¶ 53]  We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit.  The judgment of conviction is affirmed.

[¶ 54] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.